CLIFFORD G. KING *vs.* RHODE ISLAND COMPANY.

JULY 1, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Evidence.   Traffic Ordinances.*

In a personal injury action arising out of a collision between an automobile and a street railway car, a traffic ordinance of the city relative to the rule to be followed by vehicles in turning into another street was admissible on behalf of the plaintiff, as one of the circumstances which the jury might take into consideration in deciding the rights of the parties.

*(2)   Traffic Ordinances.   Charge to Jury.   Rate of Speed.*

Where the court had explained the conditions under which a driver of an automobile might assume that a street railway car would not be run at a rate of speed in excess of that fixed by ordinance, charge that, as bearing upon the reasonableness of plaintiff's conduct, he had the right to assume under those circumstances unless there was something reasonably calculated to indicate to the contrary, at the time and place, that the car was being operated there at a rate of speed not in excess of that required under the ordinances, was proper.

*(3)  Negligence.  Street Railways.  Last Clear Chance.*

When, at the time plaintiff commenced to drive his automobile into a cross street, if he had looked he should have seen an electric car coming toward him, and could have remained in a place of safety until the car had passed, his failure to look and see if there were a car coming within such distance as to deprive him of the right of way across the car tracks was negligence on his part, and in the emergency created by his negligent act when he could have driven his automobile to the far side of the street instead of attempting to complete a double curve by driving his machine towards the approaching car, his conduct was continuing negligence up to the time of the collision, and in the absence of any circumstances to the contrary plaintiff could assume that drivers of automobiles in the rear of the car, coming towards him on the far side of the street had their machines under control and would not be likely to run into him

*(4)  Negligence.  Street Railways.  Proximate Cause.  Last Clear Chance.*

Where plaintiff attempted to drive from an intersecting street into a street on which a trolley car was approaching and drove upon the tracks in an attempt to make a double curve across the tracks and return to the side of the street upon his right, the motorman was justified in assuming that plaintiff would not put himself in a place of danger and that when he did cross the tracks he would remain on the far side and the duty of the motorman to stop the car did not arise until plaintiff's peril was apparent to him when he commenced to return to the other side of the street, and in view of the short distance between the machine and the car and the few seconds the motorman had to act in, under the testimony as to what the motorman did in that time it cannot be said that he was guilty of negligence in failing to stop his car before the collision.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of defendant and sustained in part and plaintiff given leave to show cause why judgment should not be entered for defendant.

SWEENEY, J. · This is an action of trespass on the case for negligence to recover damages for personal injuries sustained by the plaintiff when his automobile was run into by a trolley car operated by the defendant.  The jury returned a verdict for the plaintiff and the defendant duly filed a motion for new trial which was denied by the trial justice after a hearing, and the case is now before this court on the defendant's bill of exceptions.

On the evening of January 31, 1918, about six o'clock, the plaintiff was driving his sedan type automobile over

Hope street, in a northerly direction, and when he arrived at Angell street turned to his right to go in an easterly direction on Angell street. On Angell street there is located a single trolley car track over which the cars of the defendant run in a westerly direction. From the south rail to the south curb line on Angell street the distance is seven feet, seven inches, and from the north rail to the north curb line the distance is ten feet, six inches. The plaintiff was very familiar with the conditions at this corner and knew that trolley cars ran over Angell street. The air was misty at the time and there was some snow and slush on the street and it was beginning to freeze. As the plaintiff began to make the turn from Hope street into Angell street, he looked in all directions for the presence of other vehicles on the streets and saw none, and started to make a long turn into Angell street and the forward wheels of his automobile were going over the south rail of the car track when he noticed a trolley car coming towards him at a high rate of speed, estimated to be twenty-five miles per hour. He continued to make a long turn, driving his automobile towards the approaching car so that its front wheels crossed the north rail of the car track and then, wishing to go to the south side of Angell street, continued the long turn so that the front wheels of his automobile recrossed the north rail, and just as the right front wheel of the automobile was over the south rail, and probably the left one, the trolley car hit the automobile, with the result that its front left mud-guard was bent, its left wheel collapsed, the tire burst, and the automobile was pushed backwards across Hope street. The plaintiff received no physical injuries as a result of the collision and he got out of his automobile without assistance and went to his home, near by, and soon afterwards returned to the scene of the accident.

During the trial the plaintiff was permitted to introduce in evidence, against the objection of the defendant, a portion of the traffic ordinances of the city of Providence, which provides that, "A vehicle in turning to the right and into

another street shall keep as near to the right curb as possible." The defendant took an exception to the introduction of this evidence and it is made the basis of its fifth exception. The admission of this evidence was not error, as it has been held by this court that the ordinance is one of the circumstances which the jury may take into consideration in deciding the rights of the parties. *Oates* v. *Union R. R. Co.*, 27 R. I. 499.

The tenth exception is to that portion of the charge wherein the court instructed the jury: "As bearing upon the reasonableness of his" (plaintiff's) "conduct, he has a right to assume under those circumstances, unless there is something reasonably calculated to indicate to the contrary at the time and place, that the car was being operated there at a rate of speed not in excess of that required under the ordinances of the city. The ordinance has been introduced in evidence here which limits the rate of speed of the car at that place to nine miles per hour. Now, unless there was something to indicate to his mind at that time and place that the electric car was moving at a higher rate of speed than that, he had a right then and there to assume that the motorman was running the car at a rate of speed not exceeding nine miles an hour."

This is a correct statement of the law applicable to the case as the learned trial justice had previously explained the conditions under which the plaintiff might assume that the car would not be run at a rate of speed in excess of that fixed by the ordinance, and the exception is overruled. *Oates* v. *Union R. R. Co.*, *supra*.

The eleventh and twelfth exceptions are to the denial of the defendant's motion for a new trial on the grounds that the verdict was contrary to the evidence and the weight thereof and contrary to the law. The court, in denying the motion for new trial, said: . . . "The Court is forced to the conclusion that the plaintiff did not exercise that degree of care for his safety that a prudent person might be expected to exercise in the circumstances. His explanation

that he was trying to observe the traffic rule, and avoid automobiles which he could see approaching from the east behind the trolley, will not justify him in driving at 6 or 7 miles an hour, nearly head-on to an electric car approaching from so short a distance, slightly down grade, at 25 miles an hour, at which speed he believed the car to be moving, in the condition of the weather and the highway as described by himself." . . .

The court also said, that . . . "the jury were warranted in finding that the speed of the" (trolley) "car was far in excess of that limited by the ordinances, and that if the motorman had observed the ordinance and the rules of the company, he would have discovered the peril in which the plaintiff had imprudently placed himself in time to check the speed and avert the accident, and that his failure to do so was the proximate cause of the injury."

The trial justice correctly finds that the plaintiff did not exercise that degree of care for his safety that a prudent man might be expected to exercise in the circumstances. (3) The plaintiff testified that when he got on the car tracks he saw the trolley car about opposite the street wall in front of the Carpenter estate; that there were automobiles approaching perhaps, back of it—he could see their lights. He further testified that it was necessary for him to make a double curve to get off the tracks, if he staid on the left side he would be violating the traffic rules and with the automobiles coming along there he would have no redress if they ran him down. The headlights and searchlights were lighted on his automobile at the time; and drivers of possible approaching automobiles, as well as the motorman, would be expected to see them. It appears from the testimony that a person standing on Hope street, near its intersection with Angell street, can see easterly on Angell street, far beyond the wall in front of the Carpenter estate. At the time the plaintiff commenced to drive his automobile into Angell street, if he had looked to the east, in the exercise of ordinary care and diligence, he should have seen the electric

car coming towards him, and he could easily have stopped his automobile, and remained in a place of safety, until the trolley car had passed.  His failure to look, and see if there was a trolley car coming within such distance as to deprive him of the right of way across the car tracks was negligence on his part.  *Frey* v. *R. I. Co.*, 37 R. I. 96;  *Price* v. *R. I. Co.*, 28 R. I. 220.  There were no approaching automobiles in front of the electric car, and it does not appear from the plaintiff's testimony how near the approaching electric car any automobiles were back of it.  In the emergency created by the negligent act of the plaintiff he could have driven his automobile to the northerly side of Angell street, instead of attempting to complete the double curve he started to make by driving his automobile towards the approaching trolley car, and this conduct was continuing negligence up to the time of the collision.  Section 17 of Chapter 1354, Public Laws, 1916, provides, among other things, that a motor vehicle shall not be operated over a public highway at a rate of speed greater than fifteen miles per hour, where the territory contiguous thereto is closely built up, and the next section provides that upon approaching a crossing of intersecting highways, the person operating a motor vehicle shall slow down.  In the absence of any circumstances to the contrary, and none are shown by the testimony of the plaintiff, the plaintiff could assume that the operators of the approaching automobiles had their automobiles under (4) control and would not be likely to run into him under the circumstances then existing.

The plaintiff claims, that notwithstanding his negligence, he is entitled to the benefit of the doctrine of the "last clear chance," but this claim is not tenable under the testimony in this case, and the law as stated in the cases of *Fillmore* v. *R. I. Co.*, 42 R. I. 102; *Hambly* v. *Bay State St. Ry. Co.* 100 Atl. 497.  The motorman was justified in assuming that the plaintiff would not put himself in a place of danger, and that when he did cross the car tracks he would remain on the northerly side of Angell street, which was a safe place for the plaintiff,

so far as it appeared to the motorman. The motorman's duty to try and stop the car did not arise until the plaintiff's peril was apparent to him, and that was when the plaintiff commenced to turn his automobile and drive it from the northerly side of Angell street to the southerly side thereof. The testimony of the motorman is that he then did everything that could be done with the brakes and other appliances at hand, to stop the car so as to avoid a collision with the automobile of the plaintiff. Considering the short distance the trolley car was from the automobile when the plaintiff commenced to drive it towards the trolley car in order to get to the southerly side of Angell street, and the few seconds of time within which the motorman was called upon to act, under the testimony it cannot be said that the motorman was guilty of negligence in failing to stop the trolley car before it collided with the automobile.

The court has carefully considered all of the evidence in this case, and in its judgment the negligence of the plaintiff was the proximate cause of the accident.

The defendant's eleventh and twelfth exceptions are therefore sustained. All the other exceptions of the defendant are overruled.

Opportunity will be given the plaintiff to appear on Tuesday, July 6, 1920, at nine o'clock, a. m., standard time, and show cause why an order should not be made remitting the case to the Superior Court with direction to enter judgment for the defendant.

*Edward C. Stiness, Daniel H. Morrissey, Cooney & Cooney,* for plaintiff.

*Clifford Whipple, Alonzo R. Williams,* for defendant.